1  Boris Zelkind (SBN 214014)
   Email: bzelkind@duanemorris.com
2  **DUANE MORRIS LLP**
   865 South Figueroa Street, Suite 3100
3  Los Angeles, CA 90017-5450
   Telephone: (619) 744-2200
4  Facsimile: (619) 744-2201

5  L. Norwood Jameson (*pro hac vice* to be filed)
   Email: wjameson@duanemorris.com
6  Robin McGrath (*pro hac vice* to be filed)
   Email: rlmcgrath@duanemorris.com
7  Glenn D. Richeson (*pro hac vice* to be filed)
   Email: gdricheson@duanemorris.com
8  **DUANE MORRIS LLP**
   1075 Peachtree NE, Suite 2000
9  Atlanta, GA 30309-3929
   Telephone: (404) 253-6900
10 Facsimile: (404) 253-6901

11 Jordana A. Garellek (*pro hac vice* to be filed)
   Email: jgarellek@duanemorris.com
12 **DUANE MORRIS LLP**
   1540 Broadway
13 New York, NY 10036-4086
   Telephone: (212) 692-1000
14 Facsimile: (212) 692-1020

15 Counsel for Defendant
   CITRIX SYSTEMS, INC.
16

17           **IN THE UNITED STATES DISTRICT COURT**

18          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

19 DATA SCAPE LIMITED,                    Case No.: 2:19-cv-04667-RGK-AGR

20                    Plaintiff,          **CITRIX SYSTEMS, INC.'S NOTICE
                                          OF MOTION AND MOTION TO
21          v.                            DISMISS FOR FAILURE TO STATE
                                          A CLAIM**
22 CITRIX SYSTEMS, INC.,
                                          Date:      August 12, 2019
23                    Defendant.          Time:      9:00 a.m.
                                          Ctrm:      850
24
                                          District Judge:    R. Gary Klausner
25                                        Complaint Filed: May 29, 2019

26

27

28
                                                   **Case No. 2:19-cv-04667-RGK (AGR)**

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 12, 2019, at 9:00 a.m., or as soon thereafter as counsel may be heard, Defendant Citrix Systems, Inc. ("Citrix") will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss this case with prejudice for failure to state a claim. Dismissal is warranted because the claims of the asserted patent are directed to patent-ineligible subject matter in violation of 35 U.S.C. §101 and are therefore invalid.

This Motion is based on this Notice and supporting Memorandum of Points and Authorities, the Declaration of Boris Zelkind, all opposition and reply papers thereto, the argument of counsel, and any other evidence that may be presented at the hearing on this matter.

This Motion is made following the conference of counsel for Citrix and counsel for Data Scape Limited ("DSL") pursuant to Local Rule 7-3, which took place on June 21, 2019. The parties were unable to reach resolution and DSL opposes the Motion. The parties agreed that DSL will file its opposition to this Motion by no later than July 15, 2019.


Dated: June 28, 2019            **DUANE MORRIS** LLP


By:/s/ *Boris Zelkind*
Boris Zelkind
L. Norwood Jameson
Robin McGrath
Glenn D. Richeson
Jordana A. Garellek

Attorneys for Defendant,
CITRIX SYSTEMS, INC.

CITRIX SYSTEMS, INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

I.      BACKGROUND ............................................................................................. 2

    A.    Overview of the '675 Patent ................................................................. 2

    B.    The Claims of the '675 Patent .............................................................. 3

    C.    Prosecution of the '675 Patent ............................................................. 6

    D.    DSL's Interpretation of the Claims of the Asserted Patents. ............... 7

    E.    Procedural History of Related Litigation ............................................. 7

II.     LEGAL STANDARD ..................................................................................... 9

    A.    Invalidity Under 35 U.S.C. §101 ......................................................... 9

    B.    Dismissal Under §101 At The Pleading Stage ..................................... 9

III.    ARGUMENT ................................................................................................. 11

    A.    The '675 Patent Claims An Abstract Idea ......................................... 11

    B.    The '675 Patent Contains No Inventive Concept Sufficient to Transform the Claims. ....................................................................... 14

        1.    The Claims Recite Generic and Functional Computer Components. .................................................................................. 14

        2.    Claim 14 is Representative ....................................................... 17

IV.     CONCLUSION ............................................................................................. 19

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

Page(s)

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013) .............................................................. 11

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
    838 F.3d 1266 (Fed. Cir. 2016) ......................................................... 12, 18

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016) ........................................................ 17-18

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208, 134 S. Ct. 2347 (2014) ................................... 9, 11, 14, 16

*Amdocs (Isr) Ltd. v. Openet Telecom, Inc.*,
    841 F.3d 1288 (Fed. Cir. 2016) .............................................................. 13

*BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016) .............................................................. 12

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018) ................................................................ 9

*BSG Tech LLC v. Buyseasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018) .............................................................. 14

*Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*,
    17-cv-5169-GW(FFM), 2018 WL 2558385 (C.D. Cal. Feb. 12, 2018)..............9-10

*CertusView Techs., LLC v. S & N Locating Servs., LLC*,
    111 F. Supp. 3d 688 (E.D. Va. 2015) ............................................... 11, 13

*Chargepoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019) ................................................................ 11

*Clarilogic, Inc. v. Formfree Holdings Corp.*,
    681 Fed. Appx. 950 (Fed. Cir. 2017) ..................................................... 14

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014) ......................................................... 10, 17

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
    880 F.3d 1356 (Fed. Cir. 2018) .............................................................. 13

CITRIX SYSTEMS, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

*Data Scape Limited v. Citrix Systems, Inc.,*
    C.D. Cal. Case No. 2:18-cv-10658-RGK-AGR ............................................. 1-2, 7-8

*Data Scape Limited v. Western Digital Corporation, et al,*
    C.D. Cal. Case No. 18-cv-2285-DOC-KES ............................................ 1-2, 8-9, 11

*Diamond v. Diehr,*
    450 U.S. 175, 101 S.Ct. 1048, 67 L.Ed.2d 155 (1981) ........................................... 17

*Enfish, LLC v. Microsoft Corp.,*
    822 F.3d 1327 (Fed. Cir. 2014) ................................................................................. 13

*Finnavations LLC v. Payoneer, Inc.,*
    No. 1:18-cv-00444-RGA, 2018 WL 6168618 (D. Del. Nov. 26, 2018) ................ 16

*Fitbit, Inc. v. AliphCom, et al.,*
    No. 16-cv-00118-BLF, 2017 WL 819235 (N.D. Cal. Mar. 2, 2017) ..................... 16

*Intellectual Ventures I LLC v. Capital One Fin. Corp.,*
    850 F.3d 1332 (Fed. Cir. 2017) ................................................................................. 12

*Intellectual Ventures I LLC v. Erie Indem. Co.,*
    200 F. Supp. 3d 565 (W.D. Pa. 2016) ...................................................................... 18

*Intellectual Ventures I LLC v. Erie Indem. Co.,*
    850 F.3d 1315 (Fed. Cir. 2017) ................................................................................. 12

*Intellectual Ventures I LLC v. Manufacturers & Traders Trust Co.,*
    76 F. Supp. 3d 536 551-552 (D. Del. 2014) ............................................................ 18

*Intellectual Ventures I LLC v. Symantec Corp.,*
    234 F. Supp. 3d 601 (D. Del. 2017) .......................................................................... 12

*Interval Licensing LLC v. AOL, Inc.,*
    896 F.3d 1335 ............................................................................................................. 13

*IPLearn-Focus, LLC v. Microsoft Corp.,*
    No. 14-cv-00151-JD, 2015 WL 4192092 (N.D. Cal. July 10, 2015) ..................... 10

*Maxon, LLC v. Funai Corporation, Inc.,*
    726 Fed. Appx. 797 (Fed. Cir. 2018) ...................................................................14-15

*Mortgage Grader, Inc. v. First Choice Loan Services, Inc.,*
    811 F.3d 1314 (Fed. Cir. 2016) ................................................................................. 16

**CITRIX SYSTEMS, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

*Multimedia Plus Inc. v. Playerlync LLC*,
  198 F. Supp. 3d 264 (S.D.N.Y. 2016) .................................................. 13, 17

*Prod. Ass'n Techs. LLC v. Clique Media Group*,
  No. CV 17-05463-GW(PJWx), 2017 WL 5664986 (C.D. Cal.
  Oct. 12, 2017) .......................................................................................... 18

*SAP Am. v. Investpic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018) ........................................................ 13, 15

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*,
  873 F.3d 1364 (Fed. Cir. 2017) ............................................................... 13

*Thunder Power New Energy Vehicle Dev. Co. v. Byton N. Am. Corp.*,
  340 F. Supp. 3d 922 (N.D. Cal. 2018) .................................................... 10

*In re TLI Communs. LLC Patent Litig.*,
  823 F.3d 607 (Fed. Cir. 2016) ...................................10, 12, 14-15, 18

*Two-Way Media Ltd. v. Comcast Cable Comms., LLC*,
  874 F.3d 1329 (Fed. Cir. 2017) ........................................................ 12, 16

*Visual Memory, LLC v. NVIDIA Corp.*,
  867 F.3d 1253 (Fed. Cir. 2017) ............................................................... 13

*Wireless Media Innovations v. Maher Terminals, LLC*,
  100 F. Supp. 3d 405 (D.N.J. 2015) ......................................................... 10

**Statutes**
                                                                                    **Page(s)**
35 U.S.C. §101 ........................................................ 1, 6, 8-11, 13, 15-16, 19

**Other Authorities**
                                                                                    **Page(s)**
Fed. R. Civ. P. 12 ............................................................................... 10, 16

Fed. R. Civ. P. 12 (b)(6) ............................................................................ 19

CITRIX SYSTEMS, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Data Scape Limited ("DSL") filed its Complaint in this action on May 29, 2019, accusing defendant Citrix Systems, Inc. ("Citrix") of infringing U.S. Patent No. 10,277,675 (the "'675 Patent") entitled "Communication System and its Method and Communication Apparatus and its Method" (Dkt. No. 1).  DSL filed its Complaint on the very same day it dismissed without prejudice an earlier action it filed against Citrix on December 26, 2018 *(Data Scape Limited v. Citrix Systems, Inc.*, Case No. 2:18-cv-10658-RGK-AGR (the "Original Litigation"), Dkt. 46).  The '675 Patent asserted in this action is a continuation of and thus shares the same specification as the three "Morohashi" Patents DSL asserted against Citrix in the Original Litigation – U.S. Patent Nos. 7,720,929 (the "'929 Patent"), 7,617,537 (the "'537 Patent"), 10,027,751 (the "'751 Patent")  (collectively the "Morohashi Patents") *(id.*, Dkt. 30-1 – 30-3).  With the exception of the '751 patent, ***all of the Morohashi patents asserted against Citrix in the Original Litigation were determined on a motion to dismiss in this District to be invalid for being directed to patent ineligible subject matter*** in a case DSL brought against Western Digital (*Data Scape Limited v. Western Digital Corporation, et al*, Case No. 18-cv-2285-DOC-KES (the "Western Digital Litigation"), Dkt. 41).  The '751 Morohashi Patent was not asserted in the Western Digital Litigation and was thus not subject to the invalidity ruling.  It was, however, the subject of a fully briefed 12(b)(6) motion to dismiss on §101 grounds in the Original Litigation (Original Litigation, Dkt. 37), a motion the Court did not have the opportunity to rule on because DSL unilaterally dismissed the Original Litigation undoubtedly to prevent the Court from deciding that patent's invalidity.  DSL's transparent procedural maneuvering – which also allowed DSL to avoid collateral estoppel invalidity determinations on the other patents asserted in the Original Litigation – cannot change the fact that the claims of the '675 Patent are virtually identical to claims in the Morohashi Patents held to be invalid in the Western Digital Litigation.  As such, the '675 Patent claims are invalid for the same reason that the

Morohashi Patents were found invalid in the Western Digital Litigation – they are all directed to the abstract idea of transferring selected data from one storage medium to another, and none contain an inventive concept sufficient to transform the claims into patent eligible subject matter.

## I.    BACKGROUND

### A.    Overview of the '675 Patent

The '675 Patent stems from the same Japanese parent application as the three Morohashi Patents rendered invalid in the Western Digital Litigation (the '929, '537, and '581 Patents) as well as the '751 Morohashi Patent that was the subject of Citrix's motion to dismiss in the Original Litigation.  All of the Morohashi Patents are titled "Communication System and Its Method and Communication Apparatus and Its Method."  The shared specification of the Morohashi Patent family, including the '675 Patent, describes a method and system for transferring music onto a portable playback device (Dkt. No. 1-1, 2:66-3:3).  The Morohashi Patents purport to address the "cumbersome work" associated with having to "select[] pieces of music [] to be transferred piece by piece" from music servers to portable playback devices (*id.*, 2:47-56).

Specifically, the "Background of the Invention" addresses the problems with both "conventional CD changers" as well as "portable audio playback devices" (*id.*, 1:30-2:62).  While "conventional CD changers" had the ability to store hundreds of CDs containing music tracks, they were quite heavy and thus not easily portable (*id.*, 1:67-2:3).  Portable audio playback devices, on the other hand, were much more compact and easy to transport, but required the user to "always take a plurality of magneto-optical discs or optical discs" if the user wished to listen to more than just a single CD (*id.*, 2:13-15).

One prior art solution to this problem was a portable playback device with a hard disc drive that could connect to a "music server" that had music stored on a hard disc drive "so that audio data stored in the music server can be transferred to the

portable audio-data playback apparatus" (*id.*, 2:36-38).  This, however, raised an additional problem, namely "if musical data is transferred from the music server to the portable audio-data playback apparatus by selecting pieces of music thereof to be transferred piece by piece, there will be raised a problem of cumbersome work to repeat the same operation several times" (*id.*, 2:46-51).

It was this "cumbersome" track by track transfer that the claimed inventions were designed to address (*id.*, 2:66-3:3) (noting an object of the invention is to provide systems and methods "capable of transferring musical data from an audio server to a portable audio-data playback apparatus with ease.").  As the specification explains, the inventions purported to address this problem by allowing a user to "edit[] a list of programs used when moving a plurality of pieces of musical data in a batch operation" (*id.*, 23:23-24).  More particularly, the specification describes the editing of a "transfer list" –  defined as "a list of pieces of musical data to be transferred from the music server 50 to the portable recording and playback apparatus" –  by either "adding a piece of musical data" to or "deleting a piece of musical data" from the "transfer list" (*id.*, 23:30-56).   The music server would then compare this edited transfer list with a "list of musical data stored in the portable recording and playback apparatus" such that "if there is a piece of musical data common to both" lists, the "transfer of the common piece of musical data can be omitted" (*id.*, 28:33-64).  The specification explains that the "transfer list can be edited" even if the portable device "is not mounted on the music server," but notes that the transfer itself will not occur "until detection of the mounting" (*id.*, 28:6-12).

**B.    The Claims of the '675 Patent**

The '675 Patent contains 25 claims, three of which (claims 1, 13 and 14) are independent.  Claim 14 of the '675 Patent is representative and recites:

14.  A communication system including a first apparatus having a first hardware storage medium, and a second apparatus, said second apparatus comprising:

[a] a second hardware storage medium configured to store management information of data to be transferred to said first storage medium;

[b] a hardware interface configured to communicate data with said first apparatus;

[c] a processor configured to detect whether said first apparatus and said second apparatus are connected, select certain data to be transferred, and edit said management information based on said selection without regard to the connection of said first apparatus and said second apparatus; and

[d] a controller configured to control transfer of the selected data stored in said second apparatus to said first apparatus via said hardware interface based on said management information edited by said editor when said processor detects that said first apparatus and said second apparatus are connected,

[e] wherein said controller is configured to compare said management information edited by said editor with management information of data stored in said first storage medium and to transmit data in said second apparatus based on a result of the comparison.

Claim 14 of the '675 Patent is virtually indistinguishable from claim 1 of the '929 Patent which was held invalid in the Western Digital Litigation and which recites:

1. A communication system including a first apparatus having a first storage medium, and a second apparatus, said second apparatus comprising:

[a] a second storage medium configured to store management information of data to be transferred to said first storage medium;

[b] a communicator configured to communicate data with said first apparatus;

[c] a detector configured to detect whether said first apparatus and said second apparatus are connected;

[d] an editor configured to select certain data to be transferred and to edit said management information based on said selection without regard to the connection of said first apparatus and said second apparatus; and

**CITRIX SYSTEMS, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

[e] a controller configured to control transfer of the selected data stored in said second apparatus to said first apparatus via said communicator based on said management information edited by said editor when said detector detects that said first apparatus and said second apparatus are connected,

[f] wherein said controller is configured to compare said management information edited by said editor with management information of data stored in said first storage medium and to transmit data in said second apparatus based on result of the comparison.

As shown, the **only** differences between claim 14 of the '675 Patent and invalid claim 1 of the '929 patent is that in the '675 patent:

1. the word "hardware" is added in front of the term "storage medium" in the preamble and element [a];

2. the term "hardware interface" is used in lieu of the word "communicator" in connection with the limitation "to communicate data with said first apparatus" in element [b]; and

3. the claimed component that is configured to "detect," "select," and "edit" in element [c] is a "processor," in lieu of the "detector" (configured to detect) and "editor" (configured to select and edit) in claim 1 of the '929 Patent.

Likewise, claim 14 of the '675 is virtually identical to the other two independent claims of the '675 Patent – claims 1 and 13. The only difference between claims 14 and 1 of the '675 Patent is that claim 1 does not recite a "controller," but instead recites that a "processor" (in lieu of the controller) is configured to "compare" and "transmit." And claims 1 and 13 are identical with the sole exception of the word "not" appearing in front of the phrases "transmit the selected data stored in said second apparatus to said first apparatus" and "connected based upon a result of the comparison," which phrases likewise appear in claim 1.

///

### C.     Prosecution of the '675 Patent

The application for the '675 Patent was filed on July 16, 2018 (ten months before the Western Digital Court's May 17, 2019 §101 Order).  During prosecution, the examiner rejected the claims, including all three independent claims, on the ground of nonstatutory double patenting as being unpatentable over claims in both the '751 and '929 Morohashi Patents (as well as their parent patent, U.S. Patent No. 7,130,251) (Declaration of Boris Zelkind ("Zelkind Dec."), Ex. A, pp. 4-6).  The examiner found that while the claims were "not identical," they were "not patentably distinct from each other" because they "encompass the same subject matter" but "with obvious wording variations" (*id*., pp. 4-5).  DSL did not dispute that rejection, but instead filed a terminal disclaimer (*id.*, Ex. B, p. 9; Ex. C).

In addition to a double patenting rejection, the examiner rejected the '675 patent claims on §101 grounds, finding the claims directed to an "abstract idea" that "can be carried out in existing computers long in use" (*id.*, Ex. A, p. 9). The examiner noted that the claims do "not purport to identify new computer hardware" but "assume[] the availability of physical components for *detecting, editing, comparing and transmitting*" (*id.*) (emphasis in original).  In response to this rejection, DSL amended the independent claims to "clarify that the first and second storage mediums are hardware storage medium" and pointed to "other hardware elements" in the claims, such as "a hardware interface," and "a controller" to show the claims were not directed to an abstract idea (*id.*, Ex. B, p. 10).  DSL further asserted the claims were patent eligible because: (i) the limitation "detecting by the processor whether the first apparatus and the second apparatus are connected" constitutes "more then [sic] gathering and organizing data" and requires "the interaction" of hardware; (ii) the transmission of data by the processor "is a hardware operation and not just manipulating data"; and (ii) the "various operations carried out by the processor are significantly more" (*id.*).  A notice of allowance issued on Feb. 14, 2019, with no further objections (*id.*, Ex. D).

**D.      DSL's Interpretation of the Claims of the Asserted Patents.**

DSL's Complaint accuses Citrix of infringing the '675 Patent through products and services wholly unrelated to the transfer of musical tracks. Specifically, DSL accuses Citrix's enterprise solutions that allow employees to securely access and share files and documents from remote locations, *e.g.*, Citrix's "ShareFile, Citrix Content Collaboration, and Citrix Workspace" (Dkt. No. 1 at ¶ 7). DSL asserts that these products infringe because they include:

(i) "StorageZones having a storage medium (e.g., Microsoft Azure or Citrix S3 cloud storage, network drives)" which communicate with "clients (e.g., mobile devices, native desktop client, virtual desktop)" that "include a storage medium" (*id.*, ¶¶ 10-11;

(ii) the ability to "let the user select folders to synchronize" by using "checkboxes to designate which folders to sync" (*id.*, ¶ 15);

(iii) the ability to transfer files "over a secure SSL/TLS connection" (*id.*, ¶¶ 12, 17); and

(iv) the ability to detect "whether network connectivity is down" with "uploads [to] be retried automatically when connectivity is restored" (*id.*, ¶13).

These allegations reveal that DSL is interpreting the '675 Patent claims to cover systems in which any type of selected data is transferred from one storage location (*e.g.*, a mobile phone) to a remote storage location (*e.g.*, cloud storage). As DSL asserted in a Complaint recently filed before the International Trade Commission ("ITC") in connection with the related '929 and '537 Morohashi Patents, the Morohashi patent claims "have broad application to the transfer of data generally" *(*Zelkind Dec., Ex. E ("ITC Complaint"), ¶¶ 31, 42, 53).

**E.      Procedural History of Related Litigation**

In DSL's Original Litigation against Citrix, DSL accused Citrix of infringing the '929, '537, '581, and '751 Morohashi Patents as well as the '893 Patent (Original Litigation, Dkt. 1). On March 14, 2019, Citrix filed a motion to dismiss arguing that

all five asserted patents were invalid under §101 (Original Litigation, Dkt. 28).  On the day DSL's response to Citrix's motion was due, DSL mooted the motion by filing a First Amended Complaint ("FAC"), which added a few conclusory paragraphs regarding the unconventional and non-abstract nature of the claimed inventions and removed the '581 Morohashi Patent from the case (Original Litigation, Dkt. 30).  On April 4, 2019, Citrix renewed its motion to dismiss, again asserting that the patents-in-suit were invalid under §101 (Original Litigation, Dkt. 37).  DSL filed its opposition to Citrix's motion on May 7, 2019 (Original Litigation, Dkt. 43).

On May 17, 2019, the Western Digital Court found the '929, '537, and '581 Morohashi Patents and the '893 Patent directed to patent ineligible subject matter and thus invalid (Western Digital Litigation, Dkt. 41).  Specifically, the Western Digital Court found that the asserted patents were "directed to an abstract idea of data storage, transfer, and processing" (*id.* at 8).  The Court further found that the claims involve only "editing information, detecting the connection of one apparatus to another, comparing data on the two [devices], and transmitting selected data from one apparatus to another" and thus "do not include an inventive concept that transforms the abstract idea into patent-eligible subject matter" (*id.* at 11).  Accordingly, the Western Digital Court dismissed DSL's infringement claims against Western Digital (*id.* at 12).  The Western Digital Court did not, however, address the validity of the '751 Morohashi Patent asserted against Citrix, as that patent was not at issue in the Western Digital Litigation.

Accordingly, on May 20, 2019, Citrix filed its reply brief in support of its motion to dismiss in the Original Action, notifying the Court of the Western Digital decision and otherwise supporting its argument of invalidity regarding the four asserted patents (Original Litigation, Dkt. 44).  On May 29, 2019, within a few hours of the Court taking the June 3 motion hearing off calendar, DSL unilaterally filed a motion to dismiss the Original Litigation without prejudice (Original Litigation, Dkt. 46).  That same day, DSL filed the instant action asserting the '675 Patent (Dkt. 1).

## II.   LEGAL STANDARD

### A.   Invalidity Under 35 U.S.C. §101

Section 101 of the Patent Act defines patentable subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. §101. The three accepted exceptions to this broad principle are "[l]aws of nature, natural phenomena, and abstract ideas." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216, 134 S. Ct. 2347, 2354 (2014). The '675 Patent falls within the "abstract ideas" category. *Id.* at 2355.  The Supreme Court has formulated a two-step process for determining whether a patent is directed to an abstract idea.  First, the Court determines whether the claims are "directed to" a patent-ineligible abstract idea. *Id.*  If so, the Court proceeds to the second step – the search for an "inventive concept" – where it analyzes whether the claim elements, considered "both individually and 'as an ordered combination,'" are sufficiently inventive to "transform the nature of the claim into a patent-eligible application." *Id.* (citations omitted).

### B.   Dismissal Under §101 At The Pleading Stage

There is no question that courts can properly determine §101 patentability at the pleading stage, as evidenced by the Western Digital Court's dismissal of the Western Digital Litigation on a 12(b)(6) motion to dismiss (Western Digital Litigation, Dkt. 41). *See also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) ("Patent eligibility has in many cases been resolved on motions to dismiss or summary judgment. Nothing in this decision should be viewed as casting doubt on the propriety of those cases"), *petition for cert. filed*, No. 18-415, 2018 WL 4819013 (U.S. Sept. 28, 2018); *Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*, 17-cv-5169-GW(FFM), 2018 WL 2558385, at *8 (C.D. Cal. Feb. 12, 2018) (citing *Coffelt v. NVIDIA Corp.*, 680 Fed.Appx. 1010, 1011 (Fed. Cir. 2017) (The "Federal Circuit has repeatedly sanctioned grants of motions to dismiss for lack of patentable subject matter"). Although the determination of "[w]hether something is well-understood, routine, and

conventional" is an issue of fact, where, as here, claims recite only generic or routine computer components for performing routine computer functionality, no underlying factual disputes exist to prevent a §101 determination on the pleadings. *See, e.g., In re TLI Communs. LLC Patent Litig.*, 823 F.3d 607, 613-14 (Fed. Cir. 2016) ("fact finding outside the record" unnecessary to decide Rule 12 motion under §101 because the specification described the invention as "performing basic computer functions such as sending and receiving data"); *Thunder Power New Energy Vehicle Dev. Co. v. Byton N. Am. Corp.*, 340 F. Supp. 3d 922, 926- 931 (N.D. Cal. 2018) (*quoting Alice*, 134 S. Ct. at 2359) (claims abstract "as a matter of law based on [patentee's] own descriptions of the patent" because "'each step does no more than require a generic computer to perform generic computer functions.'").

The Court is further not required to construe the claims before making "a validity determination under § 101." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014). Rather, where, as here, the parties' "disputed constructions in no way affect the Court's analysis," it is "particularly unnecessary" for a court to construe claims before ruling on a §101 motion. *IPLearn-Focus, LLC v. Microsoft Corp.*, No. 14-cv-00151-JD, 2015 WL 4192092, at *3 (N.D. Cal. July 10, 2015), *aff'd* 667 Fed. Appx. 773 (Fed. Cir. 2016). While the parties undoubtedly disagree on claim construction when it comes to infringement, resolution of such disputes is not required for a §101 determination, as the '675 Patent claims are patent ineligible whether construed broadly to cover the transfer of any data or more narrowly to cover only the transfer of musical tracks. *See, e.g., Wireless Media Innovations v. Maher Terminals, LLC*, 100 F. Supp. 3d 405, 410 (D.N.J. 2015) (no need to construe claims for §101 when "patent is invalid under § 101 under any reasonable construction"); *Cedars*, 2018 WL 2558385, at *8 (motion to dismiss under §101 appropriate "so long as the court construes the claim terms in the manner most favorable to the non-moving party, i.e., the patent owner.").

///

### III.   ARGUMENT

#### A.   The '675 Patent Claims An Abstract Idea

The '675 Patent claims are all directed to the transfer of selected data from one storage location to another and as such, are unquestionably abstract.  As shown above, the claims are virtually identical to the claims of the '929 Patent that the Western Digital Court found to be directed to an abstract idea.  While the '675 Patent contains only system claims, many of the claims invalidated in the Western Digital Litigation were also system claims that the Court found to be not meaningfully different from the invalidated method claims (Western Digital Litigation, Dkt. 14, p. 7).  Moreover, the '675 Patent claims are subject to a terminal disclaimer as being patentably indistinct from the invalid claims of the '929 Patent, ***including method claim 14 of the '929 Patent*** (Zelkind Dec., Ex. A, pp. 4-5) (rejecting '675 Patent claims over claims "14-18" of the '929 Patent because "they are not patentably distinct" and "encompass the same subject matter").  As the Supreme Court "warned" in *Alice*, §101 should not be interpreted "in ways that make patent eligibility 'depend simply on the draftsman's art.'" *Alice*, 134 S. Ct. at 2360(citations omitted) (finding "the system claims are no different from the method claims in substance" as they merely "recite a handful of generic computer components configured to implement the same idea" as the method claims and are thus "patent ineligible under §101"); *see also Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013) ("System claims that closely track method claims and are grounded by the same meaningful limitations will generally rise and fall together"); *CertusView Techs., LLC v. S & N Locating Servs., LLC*, 111 F. Supp. 3d 688, 710 (E.D. Va. 2015) *aff'd*, 695 Fed. Appx. 574 (Fed. Cir. 2017) ("a system or medium claim can be treated the same as a method claim where there is no 'material difference' between the categories of claims.").

In addition, the '675 Patent specification confirms that the "focus" of the claimed invention is on transferring selected data from one storage location to another. *Chargepoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 770 (Fed. Cir. 2019) ( "[w]e

have described this step one inquiry 'as looking at the 'focus' of the claims"); *See also Two-Way Media Ltd. v. Comcast Cable Comms.*, LLC 874 F.3d 1329, 1340 (Fed. Cir. 2017) (finding the court's inquiry appropriately relied on the preamble and "centered on determining the 'focus' of the claims, and was thus in accord with our precedent"). The specification explains that "the present invention" relates to a system and method "for transmitting a plurality of pieces of data from equipment for storing data to other equipment" (Dkt. No. 1-1, 1:32-36). The "Summary of the Invention" states that an object of the invention is to provide a system and method "capable of transferring musical data from an audio server to a portable audio-data playback apparatus with ease" (*id*. at 2:66-3:3). The invention is likewise described generally as providing "a second apparatus for transmitting data to the first apparatus" (*id.* at 3:7-8; 3:25-27 (providing "control means . . . to transfer data stored in the second storage medium to the first storage medium"); 3:31-34 (providing "communication method for . . . transmitting data to the first apparatus)).

Inventions directed to "organizing human activity," like the invention claimed in the '675 Patent, are routinely found to be abstract. *See BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016). Indeed, both the Federal and district courts have on multiple occasions found claims involving the transfer of selected data to be directed to an abstract idea. *See e.g.*, *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1327 (Fed. Cir. 2017) ("creating an index and using that index to search for and retrieve data" is abstract); *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1272 (Fed. Cir. 2016) ("streaming user-selected content to a portable device" is abstract); *Intellectual Ventures I LLC v. Symantec Corp.*, 234 F. Supp. 3d 601, 607 (D. Del. 2017), *aff'd*, 725 Fed. Appx. 976 (Fed. Cir. 2018) ("copying data from one location to another" is an "abstract idea"); *BASCOM*, 827 F.3d at 1348 ("filtering content retrieved from an Internet computer network" abstract); *In re TLI Commc'ns LLC*, 823 F.3d 607, 611 (Fed. Cir. 2016) (claims drawn to data collection, recognition and storage are abstract); *Intellectual*

*Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017) (claims are "directed to the abstract idea of collecting, displaying, and manipulating data"); *CertusView Techs., LLC v. S & N Locating Servs., LLC*, 111 F. Supp. 3d at 709-10 ("electronically transmitting and/or storing" data is "an abstract idea"); *Multimedia Plus Inc. v. Playerlync LLC*, 198 F. Supp. 3d 264, 271 (S.D.N.Y. 2016), *aff'd*, 695 Fed. Appx. 577 (Fed. Cir. 2017) ("transmitting data from one computer to another" is "a process as old as the internet itself"); *Amdocs (Isr) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300 (Fed. Cir. 2016) ("claims involving the mere collection and manipulation of information do not satisfy §101"); *SAP Am. v. Investpic, LLC*, 898 F.3d 1161, 1165-67 (Fed. Cir. 2018) (claims involving "storing," "selecting" and "generating" analysis of information are abstract).

Notably, there is nothing in the '675 Patent that purports to improve how a computer functions, unlike those cases in which claims were upheld as non-abstract. *See, e.g.*, *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir.  2014) (claims not abstract where "focus of the claims is on an improvement to computer functionality itself"); *Visual Memory, LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259 (Fed. Cir. 2017) (claims "directed to an improved computer memory system"); *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018) (claims "directed to an improved user interface for computing devices").  Rather, the claimed invention simply uses a computer as a tool to carry out conventional computing activities (*e.g.*, detecting, editing, comparing, and transmitting), something the Federal Circuit consistently holds to be abstract. *See, e.g.*, *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1345 (distinguishing claims that "improve a computer as a tool" from claims that *use* computers as tools); *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1372 (Fed. Cir. 2017) (distinguishing claims that improve "computer capabilities" (valid) from claims in which "computers are invoked merely as a tool" (invalid)).

///

The '675 Patent does not claim a unique or improved "hardware storage medium," "hardware interface," "processor," or "controller," but simply recites the use of these generic components in their ordinary capacity to perform standard computer functions in the same way those components have always performed such functions.  *See e.g., Alice*, 134 S. Ct. at 2360 (system claims invalid notwithstanding recitation of "specific hardware" that performs "specific computerized functions" as the claimed "communications controller" and "data storage unit" are "purely functional and generic"); *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018) (claims invalid where they did "not recite any improvement to the way in which such databases store or organize information," but simply recited a "database [that] serves in its 'ordinary capacity' of storing the resulting information."). As such, the recitation of these generic computer components does not render the claims non-abstract.

**B.    The '675 Patent Contains No Inventive Concept Sufficient to Transform the Claims.**

The claims being directed to an abstract idea, to be patentable, they must contain an inventive concept "sufficient to 'transform' the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2355.  They do not.

**1.    The Claims Recite Generic and Functional Computer Components.**

The Federal Circuit regularly find that claims lack an inventive concept where, as here, they "require only off-the-shelf conventional computer" technology for performing basic computer functions. *Clarilogic, Inc. v. Formfree Holdings Corp.*, 681 Fed. Appx. 950, 954 (Fed. Cir. 2017); *Maxon, LLC v. Funai Corporation, Inc.*, 726 Fed. Appx. 797, 800 (Fed. Cir. 2018) (device claims fail to "transform the claimed abstract idea into eligible subject matter" because they "recite generic computer elements for their basic functions"); *TLI*, 823 F.3d at 612 (system claims reciting "telephone unit" and "server" invalid as they "fall squarely within our precedent

finding generic computer components insufficient to add an inventive concept to an otherwise abstract idea").  Rather, to add an inventive concept, claimed computer components must do more than simply perform "'well-understood, routine, conventional activit[ies] previously known to the industry.'"  *Id.* at 613.

Although DSL overcame a §101 objection during prosecution, it did so only by incorporating the following generic computer components: (i) "hardware storage medium[s]"; (ii) "a hardware interface"; and (iii) "a processor" (claim 14 adds "a controller").  Yet, the specification describes the storage mediums as ordinary "hard disc or a flash memory" and explains that the interface conforms to the conventional "IrDA (Infrared Data Association) standard which allows data to be exchanged" (Dkt. 1-1, 6:35; 7:3-5).  Similarly, the claimed "processor" and "controller" are described in the specification as a generic "CPU" that "functions as a controller controlling all operations of the music server" (*id.* at 9:4-5).  As recited in claim 14, these common computer components are used in their normal capacity to do precisely what they are designed to do – store, communicate, detect a connection, compare information, edit, and transmit[1] (*id.*, cl. 14).  In this respect, the claims are analogous to the system claims invalidated in *SAP v. Ivestpic*, where the Federal Circuit observed:

> [s]ome of the claims require various databases and processors, which are in the physical realm of things. But it is clear, from the claims themselves and the specification, that these limitations require no improved computer resources [plaintiff] claims to have invented, just already available computers, with their already available basic functions, to use as tools in executing the claimed process.

898 F.3d at 1169-70.  *See also Maxon*, 726 Fed. Appx. at 799-800 (no inventive concept in claims reciting "processor" and "transceiver" as "the claims merely recite

---

[1] The specification explains that the "edit" functionality includes simply adding and deleting file names (*i.e.*, track titles) to and from a "transfer list" and that the "compare" functionality includes nothing more than comparing a stored "list with the transfer list" (*id.* at 23:48-56; 28:37-38).

generic computer elements for their basic functions"); *Two-Way Media Ltd v. Comcast Cable Communs., LLC*, 874 F.3d at 1336 ("although [the claims] recited some computer components, they required only ordinary functionality of these components"); *Alice*, 134 S. Ct. at 2360 ("[n]early every computer will include a 'communications controller' and 'data storage unit' capable of performing the basic calculation, storage, and transmission functions . . ."); *Mortgage Grader, Inc. v. First Choice Loan Services, Inc.,* 811 F.3d 1314, 1324-25 (Fed. Cir. 2016) (no inventive concept where system "claims add[ed] only generic computer components such as an interface, network, and database") (internal quotations omitted).  That DSL "overcame a Section 101 rejection during prosecution" simply does not "overcome [this] strong showing that [the] patent is patent ineligible."  *See Finnavations LLC v. Payoneer, Inc.*, C.A. No. 1:18-cv-00444-RGA, 2018 WL 6168618, at *2 (D. Del. Nov. 26, 2018); *Fitbit, Inc. v. AliphCom, et al.*, No. 16-cv-00118-BLF, 2017 WL 819235, at *18 (N.D. Cal. Mar. 2, 2017) (granting Rule 12 motion holding claims invalid under § 101 notwithstanding that the examiner had specifically found the claims patent-eligible under *Alice*).

Similarly, the claimed generic computer components are not substantively different from the computer components recited in the system claims of the other Morohashi Patents that the Western Digital Court found to lack an inventive concept. As discussed above, Claim 14 of the '675 Patent is almost identical to claim 1 of the '929 Patent that was found invalid, the differences concerning only the names of the components that are configured to perform the recited functions.   Simply changing the ***name*** of recited components – *e.g.*, "hardware interface" instead of "communicator" and "processor" instead of "editor"/"detector" – does nothing to alter the inherently generic nature of these components or their use to perform conventional computing activities.  If anything, these claim elements are even more generic than those in the '929 Patent.  Similarly, even DSL admitted during prosecution of the '675 Patent that by adding the word "hardware" to the term "storage medium," it was simply

**CITRIX SYSTEMS, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

"clarifying" the claim, *i.e.*, making explicit what was otherwise implicit (Zelkind Dec., Ex. B, p. 10) ("Claims 1, 13, and 14 have been amended to clarify that the first and second storage mediums are hardware storage mediums").   Accordingly, because the claims recite only generic computer components configured to perform "their basic functions," whether the claim elements are considered individually or as an ordered combination, they do not contain an inventive concept sufficient to transform the claimed abstract idea into eligible subject.

### 2.   Claim 14 is Representative

The remaining claims of the '675 patent offer only minor variations or "post-solution activity," and thus the Court should find them to be invalid for the same reasons that claim 14 is invalid.  *See, e.g., Content Extraction*, 776 F.3d at 1348 (agreeing that a single identified claim is representative because "the claims of the asserted patents are substantially similar in that they recite little more than the same abstract idea"); *Multimedia*, 198 F. Supp. 3d at 272 ("where claims are 'substantially similar and linked to the same abstract idea,' a court need not address each claim individually").

As noted, the differences between representative claim 14 and independent claims 1 and 13 are minor and consist of trivial wording variations (*e.g.*, reciting a "controller" in lieu of a "processor" configured for certain functionality).  These three claims thus rise and fall together.  Likewise, the dependent claims merely add either "post-solution activity" or other non-inventive features insufficient to transform the claims.  *Diamond v. Diehr,* 450 U.S. 175, 191–92, 101 S.Ct. 1048, 67 L.Ed.2d 155 (1981); *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1264 (Fed. Cir. 2016).  In particular, dependent claims 2 and 15 recite that the transferred data is "compressed," whereas dependent claims 3, 7, 11, 16, and 24 recite particular types of storage media (Dkt. 1-1, cls. 2, 3, 7, 11, 15, 16 and 24).  Dependent claims 6 and 19 identify what the editing function is "based on," and dependent claims 12 and 25 involve transmitting data in a "batch operation" (*id*., cls. 6, 12, 19, 25).  Like the

dependent claims invalidated in *Affinity Labs*, these claims "all recite functions that are not inventive but simply constitute particular choices from within the range of existing content or hardware." *Affinity Labs*, 838 F.3d at 1264.

Similarly, (i) dependent claims 4 and 17 recite "receiving" information; (ii) dependent claims 5 and 18 recite the "display" of information; (iii) dependent claims 8, 9, 21, and 22 recite determining the size of data; and (iv) dependent claims 10 and 12 add a third storage medium (Dkt. 1-1, cls. 4, 5, 8, 9, 10, 12, 17, 18, 21, 22). These additional claimed limitations are all of the type previously held to be routine or non-inventive. *See e.g.*, *Intellectual Ventures I LLC v. Erie Indem. Co.*, 200 F. Supp. 3d 565, 576 (W.D. Pa. 2016), *aff'd*, 711 Fed. Appx. 1012 (Fed. Cir. 2017) ("selecting files based on file size .. . [is] a generic function[]"); *Affinity Labs*, 838 F.3d at 1263 ("display" is abstract where claims recite no "particular technology" for the display); *Prod. Ass'n Techs. LLC v. Clique Media Group,* CV 17-05463-GW(PJWX), 2017 WL 5664986, at *7 (C.D. Cal. Oct. 12, 2017), *aff'd sub nom. Prod. Ass'n Techs. LLC v. Clique Brands Inc.*, 738 Fed. Appx. 1021 (Fed. Cir. 2018) ("displaying" is an abstract idea); *TLI*, 823 F.3d at 612 ("receiving" is a "generic computer function[]"); *Intellectual Ventures I LLC v. Manufacturers & Traders Trust Co.*, 76 F. Supp. 3d 536 551-552 (D. Del. 2014) (apparatus claims reciting "storage medium" and "processor" non-inventive). Accordingly, the dependent claims likewise rise or fall with representative claim 14.

///
///
///
///
///
///
///
///

**CITRIX SYSTEMS, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

1

## IV.    CONCLUSION

2      For the foregoing reasons, Citrix respectfully requests that the Court find the

3  '675 Patent invalid under 35 U.S.C. §101 and grant its Motion to Dismiss for Failure

4  to State a Claim pursuant to Rule 12 (b)(6).

5

6  Dated: June 28, 2019              **DUANE MORRIS** LLP

7                                      By: /s/ *Boris Zelkind*

8                                      Boris Zelkind
                                       L. Norwood Jameson
9                                      Robin McGrath
                                       Glenn D. Richeson
10                                     Jordana A. Garellek

11                                     Attorneys for Defendant,
                                       CITRIX SYSTEMS, INC.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28